UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL C. DWYER,<br><br>    Plaintiff,<br><br>  vs.<br><br>EAGLE MARINE SERVICES LTD, OAKLAND,<br><br>    Defendant. | Case No:  C 10-4440 SBA<br><br>Related to C 10-5734 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO VACATE THE ARBITRATION AWARD AND DISMISSING ACTION**<br><br>Dkt. 36 |

Plaintiff Michael C. Dwyer, acting pro se, seeks to challenge a decision by a labor arbitrator in favor of his former employer, Eagle Marine Services, Ltd. ("EMS" or "Defendant").  The arbitrator found that EMS had acted properly under the applicable Collective Bargaining Agreement ("CBA") when it assigned Plaintiff to work the second shift and subsequently terminated his employment for his refusing to do so.  The Complaint seeks vacatur of the arbitral award, pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 1947, 29 U.S.C. § 185(a), and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.

The parties are presently before the Court on Plaintiff's Motion to Vacate the Arbitration Award.  Dkt. 36.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion and DISMISSES the action, for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

EMS is a "business and employer operating within the transportation industry, providing stevedoring services in North America." Ross Decl. ¶ 2, Dkt. 50. The services provided by EMS include marine terminal operations, cargo handling and other freight-related functions. Id. EMS and the International Longshore and Warehouse Union Local 10 ("the Union") previously entered into a CBA, which governs employment at EMS. Ross Decl. Ex. 2, Dkt. 50. Among other provisions, § 10.3.1 of the CBA provides, in pertinent part, that, "The Employer reserves the right to determine which employees will perform what type of work on what shift, as well as the number of employees to be employed on an shift except that every ninety (90) days the employer shall provide the opportunity to rotate shifts by seniority (so long as the employee electing to rotate is qualified for the work to be performed.)" Id. Section 10.7 of the CBA, which is entitled "Grievance Procedure," provides that all disputes between the Union and EMS "shall be given to the PMA/ILWU Northern California arbitrator who shall render a *binding* decision." Id. (emphasis added).

On or about April 22, 2006, Plaintiff, a "Class A" longshoreman, began working as a mechanic for EMS at its Oakland, California, maintenance and repair facility. See Arbitrator's Opinion and Decision, dated July 2, 2010 ("Award"), Dkt. 38-1 at 3. Approximately a year after being hired, Plaintiff was elected Shop Steward by the mechanics at EMS. Award at 3. During his tenure, Plaintiff circulated 90-day shift rotation requests for the mechanics. Id. Plaintiff sought requests from the mechanics and made rotation decisions based on their seniority. Id. At that time, there were 55 mechanics on the seniority list, and Plaintiff was number 43 on the seniority list.

1 In February 2010, a new Shop Steward was elected. Id. Thereafter, George
2 Pepponis, a member of the Joint Job Evaluation Committee ("JJEC"), prepared a list for the
3 upcoming 90-day rotation for the foreman's approval which was to take effect on April 3,
4 2010. Id. Plaintiff was on the list of persons to be assigned to the second shift. Id.
5 Plaintiff objected to the planned assignment on seniority grounds, and met with members of
6 the JJEC to express his concern that the assignment was improper. Id. On April 13, 2010,
7 Plaintiff met with EMS Manager Gus Fashanu, which resulted in the issuance of a letter
8 from EMS to Plaintiff's foreman, Haywood Richmond, directing him "to allow [Plaintiff]
9 to remain in his current assignment until his complaint has been heard in accordance with
10 the grievance procedure as contained in section 10.7 of the agreement." Pl.'s Exs., Dkt. 38-
11 1 at 15.

12 On April 20, 2010, Plaintiff met with members of the JJEC, at which time the
13 foreman advised him to accept the second shift assignment. Award at 3. Plaintiff
14 continued to protest his assignment. Id. During the afternoon on the same day, the
15 foreman handed Plaintiff a notice of termination. Id. The termination letter states that
16 EMS was terminating Plaintiff's employment "for cause due to violations of section 10.6
17 [of the CBA]: Insubordination/failure to work as directed by the foreman, Mr. Haywood
18 Richmond." Id. at 3; see also Pl.'s Exs. Dkt. 38-1 at 24. In turn, the Union filed a
19 grievance on behalf of Plaintiff, claiming that EMS had acted without just cause and in
20 violation of the CBA. Pl.s' Exs., Dkt. 38-1 at 3.

21 Plaintiff's grievance was heard by Terry N. Lane ("the Arbitrator"), the
22 contractually-designated arbitrator, on May 20, 2010. See Pl.'s Exs., Dkt. 38 at 2-40. At
23 the hearing, which lasted three and one-half hours, both EMS and the Union, which was
24 appearing on behalf of Plaintiff, presented multiple witnesses and documents. Id.
25 Witnesses were examined and cross-examined, and each side presented opening and
26 closing statements. Id. After considering the evidence and the parties' presentations, the
27 Arbitrator issued his Award on July 2, 2010. He found that EMS had the authority under
28 § 10.3.1 of the CBA to assign Plaintiff to the second shift, and that it had grounds for

terminating his employment based upon his refusal to work the second shift as directed. Award at 5.

### B. PROCEDURAL HISTORY

Plaintiff filed a Complaint against EMS in this Court on October 1, 2010, seeking to vacate the Arbitrator's Award, pursuant to the LMRA and FAA.  On February 25, 2011, Plaintiff filed the instant Motion to Vacate the Arbitration Award.  Dkt. 35, 36.  In support of his motion, Plaintiff has proffered a voluminous compendium of exhibits which includes a complete transcript of the Arbitration proceeding conducted on May 20, 2010, as well as a copy of the Arbitrator's Award.  On May 3, 2011, Defendant filed its opposition to the motion and requests the dismissal of the action on the ground that Plaintiff lacks standing, and alternatively, that Plaintiff has failed to state viable grounds for vacating the Award. Dkt. 49.  Plaintiff did not file a reply in support of his motion.

## II. DISCUSSION

### A. STANDING

#### 1. LMRA

Section 301 of the LMRA, 29 U.S.C. § 1985(a), "authorizes suits between employers and labor organizations for contract violations." Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1447 (9th Cir. 1994).  An individual employee cannot challenge an arbitration proceeding to which the Union and the employer were the sole parties, unless he alleges a breach of the duty of fair representation, fraud or deceit.  Andrus v. Convoy Co., 480 F.2d 604, 606 (9th Cir. 1973) ("employees cannot attack the final [arbitration] award, except on the grounds of fraud, deceit or breach of the duty of fair representation or unless the grievance procedure was a sham, substantially inadequate or substantially unavailable.") (internal quotations and citations omitted); see also Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472 (9th Cir. 1984) ("unless an employee can show that he was not fairly represented by the union, grievance and arbitration is the employee's *exclusive* remedy for a breach of the agreement.")  (emphasis added); Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir. 1981) ("The parties selected arbitration, through

their collective bargaining agreement, as the means by which contract disputes would be settled and courts should not disrupt such awards").

Plaintiff lacks standing to challenge the Arbitrator's ruling or to pursue his claims against EMS in this action. The record establishes that, in accordance with the terms of the CBA, Plaintiff was represented by the Union at the arbitration held in connection with his grievance. As such, Plaintiff is bound by the results of the arbitration, unless he can show that "the union representing [him] in the grievance/arbitration procedure [acted] in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983). Nowhere in his pleadings, lengthy motion papers or any other filing submitted by Plaintiff in this action does he allege any improper or deficient conduct by the Union relating to the arbitration proceeding.[1] Rather, Plaintiff's memorandum focuses it criticisms on the propriety of Defendant's actions and the correctness of the Arbitrator's ruling. As such, the Court concludes that Plaintiff lacks standing under the LMRA to pursue vacatur of the Award.

### 2. FAA

In addition to challenging the Arbitrator's ruling under the LMRA, Plaintiff also asserts he is proceeding under the FAA. The threshold question is whether the FAA applies to this case. Defendant contends that the FAA has no application here because it "is engaged in the transportation industry." Def.'s Opp'n at 6, Dkt. 49. Section 1 of the FAA exempts from coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has interpreted this exemption narrowly, agreeing with the majority of circuits that it "is limited to transportation workers, defined ... as those workers actually

---

[1] There is nothing from the face of the record to suggest that the Union breached its duty of fair representation. By all accounts, the Union appears to have been a zealous advocate on behalf of Plaintiff. See Pl.'s Exs., Dkt. 38 at 2-40. That the Union ultimately was unsuccessful does not suggest that it comported itself inappropriately. See Acuff v. United Papermakers and Paperworkers, AFL-CIO, 404 F.2d 169, 171 (9th Cir. 1968) (rejecting suggestion that the union's failure to prevail on a grievance shows bad faith).

engaged in the movement of goods in interstate commerce." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 112 (2001) (internal quotations omitted); accord Rogers v. Royal Caribbean Cruise Line, 547 F.3d 1148, 1153 (9th Cir. 2008). Here, while there is evidence that Plaintiff worked as a mechanic for a transportation-related company, it is not clear that Plaintiff was actually engaged in the movement of interstate commerce. Award at 3. Therefore, the Court is unable to conclude, based on the record presented, that the FAA has no application here.

The above notwithstanding, the Court is persuaded by Defendant's ancillary argument that Plaintiff lacks standing under the FAA to challenge the Award. Section 10 of the FAA provides that an arbitration award may be vacated "upon application of any *party* to the arbitration[.]" 9 U.S.C. § 10(a) (emphasis added). Since Plaintiff was not a party to the arbitration, he lacks standing to move to vacate the award under the FAA. See Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988) ("This provision [9 U.S.C. § 10] has been strictly interpreted by the courts to prohibit an employee who was not a party to the arbitration from appealing the results of the arbitration between the employee's union and employer."); Jacoba v. U.S. Postal Serv., No. C 98-3533 VRW, 1999 WL 111790, at *1 (N.D. Cal. Feb. 26, 1999) (ruling that an employee whose grievance was submitted to arbitration under the terms of a collective bargaining agreement lacked standing under § 10 of the FAA). The Court thus concludes that Plaintiff lacks standing under the FAA to seek vacatur of the arbitration award.

### B.    MERITS

As an alternative matter, even if Plaintiff had standing to challenge the Arbitrator's award, he has failed to present valid grounds for vacating the award. "It is well-settled that federal labor policy favors the resolution of disputes through arbitration; thus, judicial scrutiny of an arbitrator's decision is *extremely* limited." S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL-CIO, 265 F.3d 787, 792 (9th Cir. 2001). Under § 301 of the LMRA, an arbitration award is subject to vacatur only in a "narrow" set of circumstances: "(1) when the award does not draw its essence from the collective

1  bargaining agreement and the arbitrator is dispensing his own brand of industrial justice;
2  (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the
3  award is contrary to public policy; or (4) when the award is procured by fraud." Id. at 792-
4  93.

### 1.     Draws its Esssence

An arbitration award "draws its essence" from an agreement if it is based on a "plausible" reading of the agreement. Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus. Inc. of Ariz., 84 F.3d 1186, 1190 (9th Cir. 1986). "As long as the award 'draws its essence' from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." Id. The Award plainly meets this requirement. With regard to Plaintiff's complaint regarding his assignment to the second shift, the Arbitrator correctly observed that under § 10.3.1 of the CBA, the employer has the right to "determine which employees will perform what type of work on what shift…." Award at 5. The Arbitrator also pointed out that there was no evidence that Plaintiff was inappropriately singled out for a second shift assignment. Id. The record further demonstrates that the Arbitrator reasonably concluded that Plaintiff was terminated due to insubordination and his refusal to work on the second shift. Id. Each of these conclusions is based on a plausible interpretation of the CBA.

Plaintiff argues that the Arbitrator did not give sufficient weight to a letter from Mario Alvernez of EMS, dated April 13, 2010, which instructed Plaintiff's foreman "to allow [Plaintiff] to remain in his current assignment until his complaint *has been heard* in accordance with the grievance procedure as contained in section 10.7 of the agreement." Pl.'s Exs., Dkt. 38-1 at 15 (emphasis added). Section 10.7 of the CBA states:

> In the event of a dispute between the Union and the Employer about the application of any part of this Agreement, *the parties shall confer*, and still not reaching an agreement, the issue shall be given to the PMA/ILWU Northern California arbitrator. Employees charged with violation of the agreement shall contact their Union representative who shall take up the issue with the Employer. The Union representative (Steward) not being able to settle the dispute will call the local business agent who shall take the issue up with the Employer. Failing to settle the dispute, the arbitrator will be called. *The grievance*

> *procedure shall be concluded within a thirty (30) day period.*
> *During work disputes, the employees will continue to work….*

Ross Decl. Ex. 2 at 12. According to Plaintiff, the April 13 letter proves that EMS terminated him prematurely ostensibly because the grievance process had not yet been completed when he was terminated on April 20, 2010.[2]

Defendant counters that the April 13 letter only required that it maintain Plaintiff's shift assignment "until his complaint has been heard" under § 10.7, and that his complaint was "heard" when its representatives met with Plaintiff on April 20 – the same day he was fired. Def.'s Opp'n at 11. The Court disagrees with Defendant's strained reading of the April 13 letter. The text of § 10.7 clearly states that where the parties are unable to settle their dispute informally, the "grievance procedure" concludes with the arbitration, which must take place within thirty days after the matter is assigned to an arbitrator. Construing the April 13 letter in tandem with § 10.7 of the CBA, the Court finds that the intent and purpose of the April 13 letter was to maintain Plaintiff's placement until the entire grievance was resolved—not simply until the parties had met and conferred.

Although the Court finds Plaintiff's interpretation of the April 13 letter more tenable than Defendant's, such conclusion does not justify vacating the Arbitrator's Award. A district court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv., 241 F.3d 1177, 1180 (9th Cir. 2001). Courts cannot vacate an arbitral award "even if [they] believe that the decision finds the facts and states the law erroneously." Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers, 886 F.2d 1200, 1204 (9th Cir. 1989) (en banc). Moreover, the fact that Defendant may have terminated Plaintiff in contravention of its April 13 letter does not mean that Defendant violated the CBA or

---

[2] It is not entirely clear to what extent the Arbitrator considered the April 13 letter. Although the letter was introduced as an exhibit at the arbitration by the Union representative, see Pl.'s Exs. at 67:3-68:2, Dkt. 38 at 17, the Arbitrator did not expressly discuss the letter in his Award.

that the Arbitrator's Award did not draw its essence from the CBA. The fact remains that Defendant had the discretion under the CBA to assign Plaintiff to a particular shift and that Plaintiff refused to comply with that assignment.[3] Thus, notwithstanding the April 13 letter, the Arbitrator's Award is based on a plausible construction of the CBA, which is fatal to Plaintiff's request for vacatur.

### 2. Exceeding Boundaries

Plaintiff next alleges that the Arbitrator should *only* have considered CBA § 10.6 (terminations) and § 10.7 (grievance procedure), and that he exceeded the scope of his authority by considering other provisions of the CBA. Pl.'s Mot. at 14. In particular, Plaintiff contends that the Arbitrator improperly considered CBA § 9.32 (duties of a foreman), § 10.3.1 (permitting the employer to determine job and shift assignments) and § 14 (role of the JJEC). Pl.'s Mot. at 14-17.

"[A]rbitrators exceed their powers ... not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law." Kyocera Corp. v. Prudential–Bache T. Servs., Inc., 341 F.3d 987, 997 (9th Cir. 2003) (internal quotation marks and citations omitted). To show "manifest disregard of the law," the plaintiff must show that it is "clear from the record that the arbitrators recognized the applicable law and then ignored it." Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995). "[M]ere allegations of error are insufficient." Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (internal quotation marks and citations omitted).

The issue before the Arbitrator was whether Plaintiff was properly terminated, which necessarily encompassed the issue of his assignment to the second shift. RT at 9:4-10:8. As such, all of the CBA provisions referenced by the Arbitrator in his Award were germane

---

[3] Plaintiff also claims that he was not "insubordinate" by objecting to his shift assignment and that Defendant attempted to "bribe" him to drop his grievance. Pl.'s Mot. at 8-13. These contentions fail for the same reason; namely, that the mere allegation of error by an arbitrator does not constitute grounds for vacating an arbitration award. See Stead Motors of Walnut Creek, 886 F.2d at 1207.

to the facts and circumstances leading to his termination. Indeed, Plaintiff's Union representative acknowledged at the arbitration that CBA §§ 9.32, 10.3.1 and 14 were "applicable." Id. at 11:14-18. Nothing in the record supports Plaintiff's assertion that the Arbitrator recognized the applicable law and chose to ignore it. That Plaintiff now believes that the Arbitrator should have limited his consideration to §§ 10.6 and 10.7 does not establish that he exceeded his power. See Collins, 505 F.3d at 879.

### 3. Public Policy

Finally, Plaintiff contends that the Award contravenes the National Labor Relations Act ("NRLA"), and therefore, violates public policy. The deference normally accorded to an arbitrator's award is forfeited if the award "violates [the] law or an explicit, well-defined and dominant public policy." Carpenters' Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1275 (9th Cir. 1984). "To vacate an arbitration award on public policy grounds, [a court] must (1) find that an explicit, well defined and dominant policy exists here and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." Aramark Facility Servs. v. Serv. Emps. Int'l. Union, Local 1877, AFL CIO, 530 F.3d 817, 823 (9th Cir. 2008) (internal quotations marks and citations omitted). In reviewing a public policy claim, the court "'must focus on the award itself, not the behavior or conduct of the party in question.'" Id. (quoting S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL-CIO, 265 F.3d 787, 795 (9th Cir. 2001).

Plaintiff argues that Defendant violated the NRLA by (1) terminating him in response to exercising his rights as a Shop Steward and (2) failing to abide by the CBA. Pl.'s Mot. at 9-12. The Arbitrator disagreed and found that Defendant had the authority under § 10.3.1 of the CBA to assign Plaintiff to the second shift and that Plaintiff was not "singled out" for that assignment. Award at 5. He also found that Defendant had sufficient cause to terminate Plaintiff's employment. Id. Having *factually* concluded that Defendant was properly assigned to the second shift and terminated, the Award cannot, by definition, violate public policy. Thus, whether or not Defendant allegedly acted in a manner inconsistent with the NRLA is eclipsed by the Arbitrator's finding that Defendant

comported itself consistent with the CBA.  See Aramark Facility Servs. v. Serv. Emp. Int'l. Union, Local 1877, AFL CIO, 530 F.3d 817, 823-824 (9th Cir. 2008) (court cannot "revisit the arbitrator's factual findings").  Thus, the Court rejects Plaintiff's contention that the Award must be vacated on the ground that it violates public policy.

Notwithstanding the above, the record does not support Plaintiff's assertion that the Award is inconsistent with the NLRA.  Prior to commencing this action, Plaintiff filed an unfair labor practice charge ("ULP") with the National Labor Relations Board ("NLRB") alleging that the Defendant discriminated against him because he was a union steward and for engaging in protected activities.  Ross Decl. ¶ 3.  After the Arbitrator's issuance of his Award, the NLRB rejected Plaintiff's claim on the merits.  Id. Ex. 6.  In response to the NLRB's decision, Plaintiff withdrew his ULP, and two weeks later, filed the instant lawsuit.  Id. ¶ 8.  In any event, the NLRB's decision, which is entitled to deference, see N.L.R.B. v. Int'l Bhd. of Elec. Workers, Local Union 112, AFL-CIO, 992 F.2d 990, 992 (9th Cir. 1993), further supports the conclusion that the Award is consistent with the NLRA.

## III.  CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion to Vacate the Arbitration Award is DENIED.  The instant action is DISMISSED.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  June 29, 2011

*[signature]*
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 11 -

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DWYER et al,

       Plaintiff,

 v.

EAGLE MARINE SERVICES, LTD. et al,

       Defendant.
_____/

Case Number: CV10-04440 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 30, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael C. Dwyer
10581 Englewood Drive
Oakland, CA 94605

Dated: June 30, 2011

                                                   Richard W. Wieking, Clerk

                                                                 By: LISA R CLARK, Deputy Clerk